District Court, my name is Andrew McNeil and I represent the Plaintiff Appellants. The District Court's conclusion that it lacked jurisdiction over plaintiff state law claims because the embedded issue of federal tax law was insubstantial is incorrect under the Supreme Court's and this Court's precedence for three reasons. First, the tax issue is substantial because it raises a pure question of law. The tax question at the heart of this dispute is whether the safe harbor provision is inapplicable to a distribution-based interconnection even where all other eligibility requirements have been met. Resolution of that issue returns solely on a construction of Section 118 of the Internal Revenue Code and the IRS's associated guidance. Second, the issue is substantial because this resolution would not be fact-bound and situation-specific but would provide valuable precedent for the renewable energy industry as a whole. Since Section 118's enactment, the IRS has issued four interpretive notices and at least 11 private letter rulings addressing the safe harbor scope. I'm sorry to interrupt in your introduction, but since you mentioned the IRS's various communications on the subject, do you have any views as to whether it would be helpful to invite the IRS to submit an amicus brief in this case? Either or both on the question of whether they think that the issue is substantial and the question on the merits? Ultimately, it's a decision for the court to make whether it be helpful or not. We believe that the last notice of this issue was abundantly clear that the law applies to distribution-based and transmission-based interconnections equally. We don't think a statement from the IRS is required here to resolve the issue, but to the extent, of course, that this court or the district court wouldn't believe that it would be helpful, it's prerogative to invite a submission from the government. I just want to make sure that I understand it. National Grid signed an agreement with the plaintiffs. Is there any reason why other plaintiffs couldn't just contract to exclude whatever federal tax costs this provision might be relevant? My understanding is that it's a form interconnection agreement and it has to be submitted through the tariff process. I don't believe that you can contract individually around it. At least that fact has never come up. It's never been discussed. In our experience, all of our plaintiffs use the form agreement the National Grid provides. There's no ability to circumvent the tax issue here. But you could not sign it, right? Is that correct? We could not sign it, but then there would be no interconnection. In order for these projects, these renewable energy projects, whether they're solar or wind, to sell their electricity to the grid, they need to have what's called an intertie. I understand that. I guess what I'm not understanding is why isn't this just a question of how much entry costs there are into this market? Is this actually a question for federal courts to be waiting in or is this something that parties can contract with each other to decide whether or not this is in fact a profitable industry that they want to enter in or not? I don't believe that there was an option for the plaintiffs here to contract, but I also don't think that that is a requirement for jurisdiction under Grable. I'm not aware of any case that's held as such, and I will say that federal tax issues that are necessarily raised, such as in this case, are routinely found to support jurisdiction under Grable. Let me focus again on the contract itself. Am I mistaken? I am under the impression that the contract does not expressly provide for the tax gross-up. Is that right? That's correct. It just provides that you folks are going to pay the expenses of a national grid. I believe it refers to the terms like the incremental capital costs associated with the physical connection. Right. So they bill you for what they think are the appropriate costs. They bill us for what they believe or what they claim is a tax that's actually owed on the project. I'm not focused on the tax specifically. It's everything. They bill you for I guess how much it costs guys with shovels and how much it costs engineers and how much it costs for equipment and all of the expenses plus the tax gross-up. Well, obviously it has to be actual cost of interconnection. They're not going to charge us for the donuts that they buy the guys who do the shoveling. Exactly. So they decide what they think are the appropriate costs and they bill you. Well, they can't bill for costs that's not owed. No. They couldn't just say for a check. I understand that, but they are the ones in the first instance who make this calculation and submit it to you. Right? Well, certainly. And do you have, if they did charge you for the donuts, could you say no, we're not going to pay that? I would think there would be certainly a claim potentially for breach of contract or breach of the covenant of good faith and fair dealing. We certainly You know, everybody's very interested in getting to court and suing each other. I would think that the first thing you do is you call them up and you say, what is this nonsense? And you negotiate. Right? Your Honor, this case has like a 10-year history where this is I don't know if you're aware, but it's now brought to a proceeding in the Rhode Island Public Utility Commission. Right. And you've lost them all. But let's put that to one side also. I'm just trying to focus on what is going on here. And it seems to me that what is going on here is that they are submitting a bill. And that bill is either in good faith or it's in bad faith. Indeed, your contract claim, as I read it, is not a claim of any breach of an express term. It is for the breach of the covenant of good faith and fair dealing. That's correct, Your Honor. And is not the issue there whether this was submitted in good faith? No. No, Your Honor. It's not? No. Well, the way the action is pled, the only way they could have acted not in good faith is if the tax was not owed. Right? Otherwise, there's no breach and there's no damages. If the tax was in fact owed and they correctly charged us, there's no damages. There's no way we could possibly prove an essential element of that cause of action. But more to the point, I think you have to pay the estimated fee for the tax up front. Unless you agree to pay the bill up front, they don't come in and say, well, I got my interconnection. I'm going to pay you X amount minus this tax fee that you're charging me. I believe it's all up front. I think, counsel, what I'm struggling with, and I suspect my colleagues are as well, is you're trying to not pay a tax that your opponent believes they claim in good faith that is owed to the IRS. And in your brief, you can see throughout that even if we had jurisdiction, even if we were to find this tax is not owed, the IRS is not bound by it. The IRS is not a party to this case. And so I guess I'm struggling with how you can, in a private cause of action between two contracting parties, try to basically not pay a tax that's I can't sue a retail store that's charging whatever the tax rate is in a particular state for sales tax. I can't go to the store and say, well, you know what, for this purchase, don't charge me the tax. Right? I can't do that. So what remedies do you have? I know you claim you don't have any remedies, but the problem is you're trying to address what you think is wrong. You don't think this tax is owed. But through a party that has no control and an action that has no control over the IRS. The argument that the IRS needs to be a party or needs to be bound by a decision is contrary to both the Supreme Court's and this Court's precedence. I mean, Grable itself, the IRS is not a party. Jacobson, as a case involving the resolution of an embedded tax issue in a state law claim, IRS not a party. Broder v. Cablevision, that was an issue under the Telecommunications Act. The FCC was not a party. But it's relevant to the assessment of whether it's substantial. Substantial. But in all of the cases, I can name three more, the entity that was the administrator of the statute at issue was not a party, and that in no way inhibited this Court from finding jurisdiction under Grable. Again, Jacobson, NASDAQ, Broder v. Cablevision. Well, what do you do about the fact that it seems to me that at least one of the key differences is that appellant's complaint raises claims under new law, the New York law. And it doesn't raise federal claims. And that's different than what the Grable and NASDAQ and Jacobson all contend. Why does that not matter? Well, I don't believe that's the actual procedural posture of those cases. In Grable, that was a state court-wide title action. It was an embedded federal issue. In Jacobson, that was a state law, New York False Claims Act case. The whole point of the Grable case is that the claims are on their face, claims that arise under state law, not under federal law. And the question is whether an embedded issue of federal law gives rise to federal question jurisdiction, and Grable sets forth a test, and you're arguing that your case meets that test, right? Yeah, and I think it's compelled by these Court's prior decisions in Jacobson involved whether or not a state law claim that was based on an embedded federal issue about favorable tax treatments was substantial. Right, but the only case that's on point for this is the First Circuit's decision that goes the other way, right? It says it's not a substantial question. Right, because the First Circuit ignored the fact that the IRS issued four interpretive notices, ignored the fact that it issued 11 PLRs, ignored the fact that the IRS and the Treasury Department said that extending this exception should be true. Yeah, but the question of whether it's a substantial question is, I mean, it's very bad terminology that the Supreme Court left us with, right? Because this is not like a bell against hood substantial question. Is this a real question of federal law, or is it just a made-up claim to give you pendent jurisdiction? The question is, is it substantial in the sense of having a major impact on federal law in some way? Right, and I will tell you it's far more substantial than Cablevision versus Broder. Again, that was a claim. It was a contract claim where certain individuals said that Cablevision violated state law causes of action because it didn't provide notice of certain rates as it was required in the Telecommunications Act. Here we have a similar situation. We have a class action asserting embedded federal tax claims, but if you have the IRS... I hear what you're saying. I have just one more factual question, which is it's not really disputed that they paid the tax, right? Or, I mean, they're a big company. They probably don't pay any taxes at all, given the way this country works, but they reported this as taxable income. That has an effect on the bottom line of their tax bill. You're not disputing that they told the IRS that they owe this tax? There was no basis, factual basis disputed. And just one point, and then you can dock me for my rebuttal time. The reason why the IRS issuing foreign notices is critical here is because those foreign notices weren't limited to any particular utility, distribution, agreement, renewable energy product, or geographic area. What that shows is that this issue is not fact-bound and case-specific. The IRS wouldn't go and issue foreign notices of general applicability interpreting this provision. It would just continue its process of issuing party-specific private letter rulings. It didn't do that. Yeah, but it didn't give them any money back, right? It doesn't give them any money back. When they say, you know, we operate in this country on a sort of honor system. It's tax day, a very appropriate day to be arguing this case. I sent in my tax returns, and I'm telling them, here's what I made, here's what my investments are, all that other stuff that goes into the taxes. They did that, too. But apparently, I mean, what happens then is if they pay the money, assuming they owe a bunch of money and they owe a little bit more because of this, the IRS takes the money, right? That's correct. So how are they unjustly enriched? That gets me to that cause of action. Well, firstly, again, we don't know whether they did pay or not. We don't dispute it now. But under the law, the way... Well, we have to assume... I mean, you are not disputing it for the purpose of this case. So we assume they reported it, and they paid anything that they had to pay as a result. The unjust enrichment does not have to be monetary, right? And we allege that in a complaint in our briefs. You can get... The unjust enrichment can be through the form of a competitive advantage. And by making these projects more expensive than they should be, by charging a fee for taxes not owed, you're disincentivizing the very projects that Congress... How much does this actually cost? I did a back-of-the-envelope calculation, and I thought it was like $15,000. No, for the two plaintiffs... $57,000, right? No, and the two plaintiffs, I believe, it's close to $50,000 when you combine it. $57,000. And how much have you guys spent on lawyer's fees? That, I don't have at my fingertips, Your Honor. And how much was the total interconnection fee? I believe it's a couple hundred thousand dollars. So this is a... Well... So that's what we're comparing the 50-something thousand to in a ballpark figure. So it's like 25% of the total fee? It might be a little bit less than that, or it could be that, depending on the project. But again, these are projects that are designed by entities that engage in this business. Well, Congress could come and clarify this, right? Or tell the IRS to clarify it if they wanted to. Is that correct? Sure, if it felt that there was clarification necessary. But we don't believe that there's... Well, obviously there's clarification necessary, right? You're asking us to make this decision because you think this is an important federal issue that the federal courts should decide. Right? So there's some issue there. They could have gone to the IRS and sought a refund, and we've asked them on numerous occasions, but they've stepped past the refusals. We'll deal with them. We'll hear from you on rebuttal. Good morning, Your Honor. May it please the Court. Richard Brown, Dave Pitney for the Appellees. I'll start off by saying a couple things. First of all, this is an area... The relationship between National Grid and the distributed generators is an area... I'm sorry. I'm going to need you to speak closer to your mic. I'm having a hard time hearing you. This area is exclusively governed by state law. There's a PSC. There's a public service law. There are tariffs filed with the PSC. And then there's a contract that's also governed under state law. That's the first point. The second point is that we are not charging this tax gross up adder because of some competitive advantage, because we have antipathy towards the distributed generator industry. It's our best reading of the scope of the safe harbor abetted by an independent opinion by Ernst & Young. That's why this is being charged. Okay. Can you speak to the possibility that you may or may not have availed yourself up as to either seeking a refund from the IRS or getting more clear written guidance, please? The IRS, when it came out with its 2016-36 notice, said it would not entertain any more PLRs on this issue at the back of that notice. So no more private letter rulings. So a possible way to have done this would have been to go to the IRS and seek a private letter ruling, but the IRS foreclosed that in its 2016 notice. With respect to paying Well, you could go to the tax court, right, and seek a refund that way. Couldn't you? Right, but we don't, Your Honor, we think that the safe harbor doesn't, under the safe harbor, this is taxable. So that's why we don't go to Do they have standing to go seek a tax refund when it is a tax that's being passed through that your client's assessing? They've argued that they don't have any standing to go to the tax court and seek a tax refund. We've noted that there's confusion as to what the scope of the safe harbor is in the 2016 notice.  is why your client's assessing the tax is reasonable and not an unreasonable add-on. But I do have a question about this issue of what other remedy do they have? Because in essence, your client is saying, hey, not my problem. The IRS, we interpret, and we got an expert opinion. It says we have to assess this tax, and so we're just being good citizens assessing the tax we have to assess. In your brief at page 7, when addressing the Regan exception, you say, well, they have a remedy. They can go to PSC, the New York regulatory commission for their industry. But really, how effective would the New York PSC be when a similar company in the Rhode Island case went to the Rhode Island PUC and lost there? So how effective is really that as a remedy? Well, I think it could be effective because in the Rhode Island PUC case, they lost 2-1. So there was a dissenting opinion. And in that case, all the commissioners reviewed. Now, they didn't make a decision on whether the tax was owed, but they reviewed the 2016 notice to see whether National Grid's position was reasonable or not. And that is something that could easily be done at the PUC. But I would say whether it's an effective remedy doesn't depend on whether they win. They went to the Rhode Island commission. They got a ruling. The utility commission seriously considered it. As you point out, it was a divided vote. But either way, they lost. They could go to the New York equivalent and they might lose again. And that may just mean there's not much merit to the position. They have that opportunity. I think that's what you're telling us they should do in this case, right? Correct, Your Honor. So I understand your argument, and that's what I was trying to get at, which is a remedy doesn't mean a successful remedy. But what other remedies do they have? Well, that's the primary remedy. In fact, the contract says that the ADR provision in the contract has parties may go to the PSC to have disputes resolved. So that is the remedy. I mean, we did mention in our brief that they could file under the APA and have the IRS clarify its notice. That's a possible remedy. They say, well, that wouldn't help us because we couldn't get damages. But if there was a clarification of the notice or a different notice came out that addressed the issue in a way in which the safe harbor actually applied to the interconnection payments for interconnection to distribution networks, I think my client would change his position going forward. But that's not the case here. But that is a conceivable route for the appellants in this case. How do you address, and this is my last question, how do you address your opponent's distinction of the seems to be exactly the same issue. In fact, their client was in the lower courts, the same party there. Exactly the same issue, virtually the same complaint. Mr. McNeila said that it's because they ignored some previous IRS rulings. All those IRS rulings addressed various aspects of interconnection to transmission systems, not distribution systems, transmission systems. Those rulings go back to 1988, 1990, 2001. Those are three. The fourth ruling is this 2016 notice that we've talked about and is at the center of this case. But those other rulings go way back in time and they only dealt with interconnection with respect to transmission networks. Can you articulate why you think or your position on Grable? Our position on Grable? Yes. Well, our position on Grable is that the first reason to affirm below is that the issue is not substantial. And I'll use the Tenteros formula, which was a nearly pure question of law that could be definitively settled and govern a large number of similar cases. There are no similar cases. The only case is the case that's been brought against National Grid. And, in fact, the plaintiffs concede that they do not know whether any other utility charges a tax gross-up adder as National Grid does. So there are no other cases. And the fact that there are some references to some generic language in some Department of Energy documents that don't actually mention a tax gross-up adder is not a reason for this case to be substantial. And there's been no deterrence of any there's no evidence of any deterrence of any distributed generator signing up because of the tax gross-up adders has been charged. Both their clients signed up. So for that reason, and the other reason is it doesn't really affect, it's not really a question of a federal action. It's not affecting the federal agency. It's really what the First Circuit said  So that's the principal reason is that it's not substantial. Well, there are other parties and other cases. Presumably their clients are not the only clean energy systems that would have an interest in connecting with National Grid, right? And anyone who does do that would be affected by this case. Yeah, but the only utility is National Grid. My point, Your Honor, is that there are no other utilities that are charging on that. So there's a case in that. Well, isn't that a little strange? Doesn't that make one wonder as to the reasonableness of the position? If all the other similarly situated companies to National Grid don't see the tax case that way? I'm not sure that's the I'm not sure that's the case. We just don't know. There's no evidence of any other cases in which this is being done. But at any rate, this is, the other point is, it is this somewhat unique tax issue as compared with the Grable case where it affected the procedures for collecting every tax judgment ever in the country going forward, going past. It was a big deal to the IRS. Here it sounds like it's not such a big deal to the IRS. They're getting money. They usually like getting the money. And they're apparently sick of opining and don't want to opine anymore for whatever reason. Don't want to clarify this. It doesn't sound like something that the national government is deeply worried about. I think that's true, Your Honor. The question is whether this issue for Grable is whether this is important to the federal system as a whole. And the Grable case, the Supreme Court found that it was because presumably there are a fair number of instances in which the tax in which, I'm sorry, the IRS seizes real estate to pay delinquent taxes and then sells that real estate. There are cases like the Jacobson case from this court where it involved Renex and in the wake of the subprime mortgage meltdown. In the NASDAQ case, again it involved a large IPO, the Facebook IPO, and also involved significant issues as to whether NASDAQ followed federal rules. Those cases are categorically different from this case, Your Honor. I see that my time is up. Thank you. Mr. McGill, you've got three minutes. Thank you, Your Honor. First, I want to address the issue of the IRS in its most recent notice where it said that clearly this was applying to distribution-based systems as well. The reason why it said no more PLRs is because it thought it had resolved the issue just in accordance with our reading of it. And the fact that it said no more PLRs is because it was being flooded with PLRs. The fact that it said no PLRs, we're more pleased. We're going to resolve this now versus via a generally applicable notice nationwide is because the issue is not isolated. But how does that help you? How does that argument help you? How does it help us? Because, go ahead. Sure. Because it shows the issue is not isolated or anomalous. The IRS, if it wasn't being flooded with requests from individuals where it was issuing private letter ruling after private letter ruling, would have no incentive then to say, yeah, we need to go out and clarify this in a generally applicable interpretive notice. You're saying that because they're being flooded they're not clarifying? No. They thought they clarified the issue. Why would they say, after they issued this notice, in light of numerous  Because they thought that they clarified it. Your opposing counsel thinks that they clarified it too. And they are asking you to pay it. They're charging you. I do think we understand each other. I'm just not sure how that fact helps your cause. The fact helps my cause, Your Honor, because it shows that the issue is not peculiar to the particular parties before the court. If the IRS was not getting repeat nationwide for a ruling on this particular issue, it would have continued the process of issuing party-specific private letter rulings. It said, no, we're going to resolve this issue once and for all in a 2016 notice, and said please, we've spoken now. No more private letter ruling requests. That's the inference to draw from this. Second, we do plead that there is another utility that engages in the same process. It's Eversource. I don't have the exact complaint number of the paragraph number available, but it's in the complaint and it's in our brief. We mention that. The fact that the PLRs, I think counsel described them, is not dealing with distribution systems, just transmission systems. On pages 8 to 9 of our reply brief, we point out that's frankly inconsistent with how they described those PLRs in their own request to the IRS. And I think that's important to note here too. The IRS received a request from the defendants here in 2015, its own PLR, saying please clarify this. And the IRS said, no, we're not going to clarify it in the context of your particular agreement. Instead, we're going to issue generally applicable guidance to the industry as a whole that's not limited to any particular agreement, any particular utility, any particular project, or any particular geographic region. That's in the record. Their last PLR was one of the triggers that led the IRS to say, we're going to resolve this for everybody. No more PLRs. Thank you.